UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff,

Case No. 04-80728

vs.

HON. GEORGE CARAM STEEH

TIMOTHY PIERRE CLARK and
RICHARD BURLEY,

    Defendants.

_____/

## ORDER REGARDING SENTENCING

    Before the court in this criminal case is the sentencing of two defendants, Richard Burley and Timothy Pierre Clark. These defendants have pleaded guilty to a two-count indictment charging them with bank fraud, aiding and abetting, in violation of 18 U.S.C. §§ 1344 and 2, and conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 371. Both defendants tendered guilty pleas without entering into Rule 11 Plea Agreements, and for that reason neither defendant has admitted to any aggravating circumstances which might enhance their sentences under the United States Sentencing Guidelines. As asserted by the Government's sentencing memorandum, each of the defendants has acknowledged that the Federal Rules of Evidence do not apply at their sentencing hearings, in accordance with Fed. R. Evid. 1101.

    The government argues for three enhancements to the sentences of Burley and Clark, based on the value of the loss, the use of device making equipment, and the

alleged role of each of these defendants as an organizer or leader of five or more participants. The presentence investigation report also recommends finding that the enhancements apply. At the sentencing proceedings held January 26, 2006, defendants objected to the presentence recommendations, including enhancements to the offense score based on the amount of the loss, the use of device making equipment, and his role in the offense. The presentence report calculated the offense level at 26, criminal history category IV, resulting in a guideline range of 92 to 115 months. On December 19, 2005, the date of the initial hearing in these sentencing proceedings, the parties were given an opportunity to present evidence bearing on the guideline factors. The government called Agent Todd Gilevich and three other witnesses requested by defendants to be produced. The court has been asked to consider this testimony, together with grand jury testimony, law enforcement reports, and other documents in resolving the defendants' objections. The sentencing hearing is now scheduled to conclude on February 27, 2006 at 3:00 p.m. Below the court will outline its findings with respect to each of the disputed enhancements.

**1.      Loss Amount**

a. Defendant Richard Burley

In establishing a factual basis for the plea, defendant Burley has admitted his participation in a scheme in which legitimate checks were stolen from a Detroit area bank, then scanned and duplicated using computer equipment, then printed with new amounts and fictitious payees. These checks were subsequently cashed at various locations.     The presentence report increases the Base Offense Level by 16 levels, based on a loss of an amount between $1,000,000 and $2,500,000, pursuant to

U.S.S.G. § 2B1.1(b)(1)(I).  Defendant argues the testimony of Agent Gilevich establishes a loss attributable to him of only $80,000, which would add eight levels to the offense score, rather than 16.  The court, based on a review of all the evidence submitted, finds the presentence report accurate in this regard and overrules defendants' objections.

It is undisputed that the spreadsheet produced by government investigators sets forth hundreds of counterfeited checks presented and paid for by nine area banks.  The sum of those checks totals $1,779,966.10.  It is also undisputed that Mr. Burley aided and abetted in the commission of the fraud involving at least some of these checks.  As to the intended loss, although defendant argues there is insufficient evidence from which to conclude that any particular sum should be found as the intended loss for guideline purposes, the court finds that there is ample information from which to draw that conclusion.

In pleading guilty to Count I of the indictment, co-defendant Khary Lawson indicated that defendant Burley initially approached him to ask that he steal checks from his employer.  Defendant Lawson gave those checks to defendant Burley, and later to Mr. Clarke.  Co-defendant Theodore Washington, in his plea agreement, indicated that he rented space in Detroit to defendant Burley in November 2002, to store a computer, printer, scanner and other equipment, and thereafter observed defendants Burley and Clark counterfeiting checks.  The undisputed evidence is that all of the fraudulent checks were printed on the same equipment by either Mr. Burley or Mr. Clark.

The government also points to grand jury testimony of various witnesses which supports a finding of the loss amount asserted.  Frank Smith testified before the grand

3

jury in this matter that defendant Burley was defendant Clark's "best friend," and had approximately five people cashing checks for him.  Concerning the amount of check cashing activity, Smith testified that defendants Clark and Burley would "split" the checks to be cashed on any particular day, each receiving approximately 50 or 60, and that checks were printed up and cashed on "every day except for Sunday."  Smith Grand Jury Transcript, pp. 12-16.  Smith testified that the checks were generally in the range of $760 to $820, and that he was personally involved in the scheme for approximately 10 months.

The grand jury testimony of LaJoy Hughes also supports the loss finding argued for by the government.  For instance, she testified that on a day in June, 2003, she witnessed defendant Burley make approximately 24 counterfeit checks, in amounts between $500 and $900, and although she did not personally witness those activities again, she heard defendant Burley discuss making checks "every weekday, Monday through Friday," and witnessed defendant Burley pass checks out to scheme participants "about forty or fifty times."  Hughes Grand Jury Transcript, pp. 12-14.

Finally, the grand jury testimony of Lamarr Jones, a former roommate of defendant Burley, supports a loss amount in excess of $1,000,000 as well.  In that testimony, he stated that both defendants Burley and Clark were the leaders of the "Cash Money Boys," and described defendant Burley printing out approximately 100 checks a day in amounts ranging from $700 to $1,000, witnessed by Jones "maybe fifty, sixty times."  Jones Grand Jury Transcript, p. 11.  The court notes also that interview notes and investigative notes furnished by the government provide corroboration for the testimony described above.

Based on the information presented in this matter, including the grand jury testimony highlighted above, the admissions of these defendants, the plea agreements of co-defendants, and other documents and information furnished by the government in support of its request, it is the court's finding that sentencing enhancements in the amount requested by the government pursuant to U.S.S.G. § 2B1.1(b)(1)(I) is appropriate, as the government has established by a preponderance of the evidence that the reasonably foreseeable loss attributable to defendant Burley was in excess of $1,000,000.

b.  Defendant Timothy Pierre Clark

The government also seeks to hold defendant Clark responsible for a reasonably foreseeable fraud loss of $1,683,587.72[1], thus subjecting defendant Clark to the same number of levels of enhancement as defendant Burley.  Although he similarly asserts that only a fraction of the asserted loss amount can be attributed to him, the enhancement also appears appropriate as to defendant Clark.  As with defendant Burley, discussed above, it is not disputed that the spreadsheet exhibit offered by the government shows that in excess of 2000 counterfeited checks were presented to and paid for by nine area banks in this scheme between February 1999 and October 2003, totaling $1,779,966.10.  Furthermore, defendant Clarke, who has also pleaded guilty to the two-count indictment, clearly does not dispute that he aided and abetted in the commission of the fraud involving a certain number of these checks.  Based on the

---

[1] The government notes in its sentencing memorandum that defendant Clark is charged with this lesser amount due to his incarceration on another fraud-related conviction until June 20, 2000.

5

information in the record, including that summarized below, the court agrees that enhancement of three levels for the amount of the loss attributable to defendant Clark is appropriate.

As discussed above in connection with defendant Burley, Smith testified before the grand jury that defendants Clark and Burley would divide the checks to be cashed on any particular day, each receiving approximately 50 or 60, every day but Sunday. Smith Grand Jury Transcript, pp. 12-16.  Smith stated checks were drawn for between $760 to $820, and that he was personally involved in the scheme for approximately 10 months.  Although defendant Clark's sentencing memorandum asserts that Smith has "no credibility," the court notes that there is no specific ground given for disbelieving the general scheme and daily routine engaged in by Smith and others working under defendants Clark and Burley.

Furthermore, the grand jury testimony of LaJoy Hughes demonstrates her knowledge of a counterfeiting operation in which her brother, Orlando Marshall, worked with defendant Clark.  She testified that she personally received actual payroll checks to be counterfeited from defendant Clark to give to her brother, and knew of other times Clark gave her brother checks to copy.

Lamarr Jones also testified before the grand jury about defendant Clark's involvement.  He testified that defendant Clark taught defendant Burley how to print the counterfeit checks, and watched defendants Clark and Burley making checks "fifty to sixty times, maybe more."  Jones Grand Jury Transcript, p. 13.

As with defendant Burley, investigative notes and witness interviews corroborate the testimony of grand jury and sentencing hearing witnesses.  The court is convinced,

by a preponderance of the evidence, that even a conservative estimate of defendant Clark's responsibility in this scheme would intimately connect him to the checks he made as well as those made by defendant Burley, rendering most of the counterfeited checks passed in this scheme–certainly totaling in excess of $1,000,000--reasonably foreseeable to defendant Clark. For that reason his sentence will be enhanced as requested by the government.

2. **Role of Defendants Burley and Clark as Organizers or Leaders of a Criminal Activity**

Based on the facts set forth above, the court likewise finds, by a preponderance of the evidence, that each of these defendants is properly considered an organizer or leader of a criminal activity that involved five or more participants, which subjects each defendant to a sentencing increase of four levels under U.S.S.G. § 3B1.1, captioned "Aggravating Role."

Although defendant Burley argues about the inconsistency of the grand jury testimony, the court finds that testimony consistent to the extent it described defendants Burley and Clark as the leaders of a counterfeiting system in which those witnesses were involved. Each one of the grand jury witnesses described defendants Clark and Burley as the individuals in charge of counterfeiting checks and sending teams out to cash those checks. Furthermore, redacted reports attached to the government's sentencing memorandum, such as an email dated November 27, 2001, demonstrate the identification of defendant Clark as the leader of the "Cash Money Boys." While this group had other social purposes, it also served as the source for recruits in this criminal enterprise. Likewise, as noted above, the testimony of Lamarr Jones before the grand

jury indicated both defendant Burley and defendant Clark were the leaders of the "Cash Money Boys."

Furthermore, as stated above, all of the witnesses before the grand jury described defendants Burley and Clark as leaders or organizers in the counterfeiting scheme, and each outlined a process involving five or more participants. For these reasons, U.S.S.G. § 3B1.1 will apply, and each of the defendants will be subject to a four level sentence enhancement for his role in the organization.

### 3. **Use of Device Making Equipment by Defendants**

The government's contention, that the use of device making equipment in making the counterfeit checks adds two levels to the Base Offense Level, citing U.S.S.G. § 2B1.1(b)(10)(B)(I), has not been seriously contested by either defendant. The court finds there has been ample information presented by the government, though the witnesses, admissions, and reports discussed above and in the record, to find that this enhancement applies.

### CONCLUSION

For the reasons stated above, both the presentence findings as well as the government's recommended guideline range of 92 to 115 months shall be adopted by the court as to each of the defendants addressed herein, Richard Burley and Timothy Pierre Clark.

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: February 23, 2006

CERTIFICATE OF SERVICE

8

Copies of this Order were served on the attorneys of record on February 23, 2006, by electronic and/or ordinary mail.

                                            s/Josephine Chaffee
                                            Secretary/Deputy Clerk